UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:        LYNNISE D. CULLER,          :        Chapter 13
                                          :
              Debtor.                     :
                                          :
                                          :        Bky. No.  17-14554 ELF
                                          :

# M E M O R A N D U M

## I.  BACKGROUND AND SUMMARY OF OPPOSING ARGUMENTS

On March 23, 2017, Wilmington Savings Fund Society FSB, as Trustee for RMAC Trust, Series 2015-5T ("WSFS") obtained a judgment in mortgage foreclosure in the amount of $49,516.62 against the residential real property of Debtor Lynnise D. Culler ("the Debtor").  On July 5, 2017, three and one-half (3 ½) months later, the Debtor commenced this chapter 13 bankruptcy case.

On August 29, 2017, WSFS filed a secured proof of claim in the amount of $59,280.00, which includes charges for interest, legal expenses and various disbursements WSFS made after the entry of the foreclosure judgment. The Debtor has filed a plan in which she proposes to pay off WSFS's entire residential mortgage claim pursuant to 11 U.S.C. §1325(a).

On January 8, 2018, the Debtor filed an objection to WSFS's proof of claim ("the Objection"), relying largely on the doctrine of merger under Pennsylvania law.

A hearing on the Objection was held and concluded on February 13, 2018.  The record consisted solely of argument, WSFS's proof of claim and the payment history attached to it.  The parties filed memoranda of law in support of their respective positions on February 27, 2018.

Based on the merger doctrine under Pennsylvania law, the Debtor asserts that WSFS's

claim should be disallowed in part because certain charges included in the claim are unenforceable due to the entry of the foreclosure judgment..

Under the doctrine of merger, as articulated by the Third Circuit in In re Stendardo, 991 F.2d 1089 (3d Cir.1993),

> after the entry of a foreclosure, the terms of a mortgage are merged into the foreclosure judgment and the mortgage no longer provides a basis for determining the respective rights and obligations of the parties. **Because the foreclosure judgment constitutes a "new and higher" obligation, mortgage provisions relating to items such as the interest rate and the borrower's obligation to reimburse the lender for advances for taxes and insurance are superseded by the judgment and are no longer operative**.

In re Smith, 463 B.R. 756, 761 (Bankr. E.D. Pa. 2012) (emphasis added) (citing Stendardo).

In response, WSFS points to language from Stendardo and its progeny which acknowledge the existence of a contractual exception to the merger doctrine:

> [A] provision of a mortgage may survive the entry of judgment if the mortgage clearly evidences the parties' intent to preserve the effectiveness of that provision even after the entry of judgment.

Smith, 463 B.R. at 761 (citing Stendardo). WSFS asserts that the Debtor's mortgage preserves its right to assess the charges disputed here.

For the reasons explained below, the Objection will be sustained in part and overruled in part.

To the extent that WSFS seeks to augment its pre-petition judgment by adding interest at the 11.25% contract rate, rather than the 6% legal rate, its claim will be allowed. However, to the extent that WSFS seeks to augment its claim by adding post-judgment legal expenses, its claim will be allowed only in part. Finally, the Objection will be sustained with respect to all of the remaining components of WSFS's claim.

As a result, WSFS's claim will be allowed in the amount of $51,719.13.

## II. THE AMOUNT SOUGHT IN THE PROOF OF CLAIM

Last year, in <u>In re Cohen-Harvin</u>, 571 B.R. 672 (Bankr. E.D. Pa. 2017), I resolved a claim objection contested matter involving the same issues presented here. Like the creditor in <u>Cohen-Harvin</u>, 571 B.R. at 678, WSFS filed a proof of claim that calculated its claim as if no judgment was entered prepetition. In other words, rather than using the judgment as the starting point and identifying the additional charges for which it seeks allowance, WSFS's proof of claim uses the date of default of the mortgage as the starting point (a date that preceded the entry of judgment) and then tacks on to the principal balance additional sums for interest, fees and costs and escrow deficiency that accrued thereafter as if no judgment had been entered.[1]

Fortunately, also as in <u>Cohen-Harvin</u>, WSFS attached a loan history, <u>see</u> Fed. R. Bankr. P. 3001(c)(2)(C), Official Form 410A, that makes it possible to isolate what amounts accrued after the entry of judgment.

Following the Debtor's Objection to its proof of claim and WSFS employed the judgment amount as the starting point in the calculation of its allowed secured claim. WSFS asserts that its

---

[1] This type of filing is understandable, given that creditors holding claims secured by a security interest in a debtor's principal residence are mandated to file proofs of claims which "shall conform substantially to the appropriate Official Form" and attach supporting documents "prescribed by the appropriate Official Form." Fed. R. Bankr. P. 3001(a), (c)(2)(C); 9009. The relevant Official Forms, 410 (proof of claim) and 410A (mortgage proof of claim attachment) are mainly aimed at showing the total debt, secured status and prepetition arrears. The forms require some creative action to complete properly if a judgment has been entered.

Most bankruptcy debtors file to cure their arrears rather than pay off a foreclosure judgment in full, and so it makes sense, given the state of the Official Forms, that mortgage creditors that have reduced their mortgage to a judgment still file proofs of claims as though the account was in contractual arrears.

allowed claim through the date of the bankruptcy petition (July 5, 2017) should consist of the

pre-petition judgment amount ($49,516.62) enhanced by following sums:

| | |
|---|---:|
| interest @ 11.25% | $ 1,602.51 |
| satisfaction of a lien against the property | 1,629.91 |
| insurance | 433.50 |
| attorney's costs | 152.79 |
| attorney's fees | 1,455.00 |
| property preservation | 141.00 |
| corporate advances | 10.05 |
| **Total of Additional Amounts  Sought** | **$ 5,424.76** |

(See WSFS Memorandum at 4-6) (unpaginated).[2]

### III.  ANALYSIS

#### A. Principles of Cohen-Harvin and Biddle

In Cohen-Harvin, I held that:

- notwithstanding the existence of a pre-petition mortgage foreclosure judgment and the doctrine of merger, a bankruptcy court may allow post-petition charges included in a mortgagee's proof of claim, to the same extent that a Pennsylvania court would permit the mortgagee to "reassess damages;" and

- generally, a Pennsylvania court may reassess damages after the entry of judgment only to the extent that a contractual exception to the merger of the mortgage exists.

571 B.R. at 676.

The Superior Court decision in EMC Mortg., LLC v. Biddle, 114 A.3d 1057 (Pa. Super.

---

[2]     It is striking that, in its proof of claim, WSFS sought the allowance of an amount that exceeded the judgment by approximately $9,700.00 and now seeks to augment the judgment by only (approximately) $5,500.00. WSFS has not explained this disparity.  To the extent that the difference is based on additional interest, attorney's fees or other advances made between the filing of the foreclosure complaint and the entry of the judgment, WSFS is not entitled to the allowance of those sums.  Cohen-Harvin, 571 B.R. at 677 (citing EMC Mortg., LLC v. Biddle, 114 A.3d 1057, 1069 & n.8 (Pa. Super. Ct. 2015)).

Ct. 2015) provides guidance to the trial courts in determining whether particular borrower obligations and charges merge into the foreclosure judgment and are extinguished or whether they do not merge, and therefore survive the entry of judgment as ongoing borrower obligations.

In Biddle, the subject mortgage provided that the creditor could foreclose by judicial proceeding after default and "collect all expenses incurred in pursuing [the foreclosure remedy] including, but not limited to, attorneys' fees and costs of title evidence," 114 A.3d at 1068. The court held that the concept of "foreclosure," as it is referenced in a mortgage provision that provides for legal expense-shifting, encompasses the entire foreclosure process through sheriff's sale, not just through the entry of judgment. As a result, the legal expense-shifting provision did not merge into the judgment, but rather, survived as an ongoing obligation of the borrower and could be the basis for reassessing damages.

By comparison, however, the provision of the mortgage in Biddle that imposed the general duty on the borrower to reimburse the lender for mortgage advances lacked any express language suggesting that the duty survived the entry of judgment. Therefore, post-judgment advances made by the lender could not be reassessed (unless they were covered by the legal expense shifting provision of the mortgage). Id. at 1068-69.

In Cohen-Harvin, I applied Biddle and allowed reasonable post-judgment legal expenses, but disallowed post-judgment charges for escrow advances (taxes and insurance) and appraisal costs. Cohen-Harvin, 571 B.R. at 680. I now apply the same principles to the facts in this contested matter.

## B. Application of Law to Facts

### 1. applicable mortgage and note provisions

In support of its position, WSFS relies on the following three (3) provisions of the subject mortgage.

Paragraph 7 of the mortgage provides that if the borrower defaults on any of its obligations under the mortgage or any legal proceeding is instituted that materially affects WSFS's interest in the property, WSFS may "make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest." It also provides that amounts disbursed pursuant to Paragraph 7 "shall become additional indebtedness of the Borrower secured by this Mortgage."[3]

Paragraph 17 of the mortgage provides that if the borrower does not cure a default in the manner provided in the mortgage,

> Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. **Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to reasonable attorneys' fees, and costs of documentary evidence, abstracts and title reports**.

(emphasis added).

Paragraph 21 of the mortgage provides that the interest rate payable "after a judgment is entered on the Note or in an action in mortgage foreclosure shall be the rate state[d] in the Note." The rate stated in the Note is 11.25%.

---

[3] Given the nature of WSFS's argument regarding paragraph 7, it also should have cited paragraph 2. Paragraph 2 requires the borrower to make monthly escrow payments for anticipated assessed real estate taxes as well as for hazard insurance premiums.

With the exception of paragraph 21, the mortgage provisions WSFS relies upon in support of its position that the post-judgment advances may be allowed via the contract exception to the merger doctrine are indistinguishable from the mortgage provisions discussed in <u>Biddle</u> and <u>Cohen-Harvin</u>.

### 2. post-judgment interest

Paragraph 21 authorizes WSFS to charge post-judgment interest at the 11.25% contract rate. This is sufficient to establish the parties' intent that the contract interest rate survives the merger of the mortgage into the judgment.

WSFS calculates the amount of post-judgment interest through the petition date to be $1,602.51. (WSFS Memorandum at 6). The Debtor has not questioned this calculation, so it will be allowed.

### 3. post-judgment legal fees and costs

Next, I consider WSFS's entitlement to reimbursement of legal expenses.

As in <u>Biddle</u> and <u>Cohen-Harvin</u>, WSFS's reasonable post-judgment legal expenses incurred in the foreclosure process are allowable. The Debtor, however, disputes the reasonableness and necessity of the expenses claimed. I agree with the Debtor, but only in part.

WSFS seeks allowance of attorney's costs of $152.79 and attorney's fees of $1,455.00.

There is nothing in the record regarding the costs expended. The documents attached to WSFS's proof of claim purport to show every charge against the Debtor's account up to the date the proof of claim was filed. There are two (2) post-judgment charges attributed to "Attorney

Advance Disbursement": $1,155.00 on April 14, 2017, $300.00 on July 21, 2017. These charges laid out in the proof of claim are evidence that $1,455.00 was billed for legal expenses.

This is the only evidence in the record regarding post-judgment legal expenses. There is no evidence in the record that $152.79 in legal costs were actually incurred, and the proof of claim provides evidence that they were not. Every other charge against the Debtor's account is listed. If legal costs are not listed, then I can infer that such bills were not charged to the Debtor's account and are not owed by the Debtor. Therefore, the claimed legal costs will be disallowed.[4]

As for the attorney's fees, even in the absence of a concrete record regarding the purpose and time spent by counsel, as in Cohen-Harvin, 571 B.R. at 679 n.6, there is enough in the record to permit me to make an allowance determination.

The state court docket reflects that this bankruptcy case was filed six (6) days prior to a scheduled sheriff's sale.[5] The docket further shows that after the bankruptcy was filed, WSFS's counsel arranged for the postponement of the July 11, 2017 sheriff's sale to September 12, 2017. Thereafter, the sheriff's sale was postponed an additional five (5) times (to November 10, 2017, December 5, 2017, January 2, 2018, February 6, 2018 and March 6, 2018). WSFS obtained three (3) of the postponements by filing a motion in the state court, the first of which was filed on

---

[4] I acknowledge that this is a surprising outcome. It is hard to believe that no court costs (such as filing fees in the sheriff's sale process) were expended in the period between the entry of judgment and the bankruptcy filing. However, it is not the court's function to guess the amount of those costs. It was incumbent on WSFS, as the claimant, to document expenses. At a minimum, the lender could have included costs in the loan history filed with its proof of claim.

[5] A bankruptcy court may take judicial notice of the matters of record in the state courts within its jurisdiction. See, e.g., In re Soto, 221 B.R. 343, 347 (Bankr. E.D. Pa.1998).

November 1, 2017 and the most recent on February 6, 2018.

As observed in In re Billings, 544 B.R. 529, 534 (Bankr. E.D. Pa. 2016), aff'd, 687 F. App'x 163 (3d Cir. 2017) (nonprecedential), under Pennsylvania law, "postponing" a sheriff's sale, rather than "staying" the sale allows the executing creditor to avoid the expense of re-advertising the sale.  However, the Pennsylvania law limits the duration of and number of postponements that may be requested without obtaining a "special order" of the court.  See Pa. R. Civ. P. 3129.3; Billings, 544 B.R. at 533.  Hence, for WSFS had to file several motions in order to postpone the sheriff's sale to a point in time six (6) months after the bankruptcy filing.

The question here is not the propriety of the procedure WSFS used to obtain postponements instead of staying the sheriff's sale under Pennsylvania law.  Rather, the issue is whether the legal expenses incurred are allowable as reasonable expenses of foreclosure under paragraph 17 of the mortgage.

At the outset of a chapter 13 bankruptcy case, depending upon the circumstances, it may be reasonable for a lender to postpone, rather than stay, a sheriff's sale in order to see if the debtor will follow through and file his or her bankruptcy schedules and a plausible plan, all of which should occur in the first thirty (30) days after the commencement of the case.  As one goes deeper into the bankruptcy case, however, the burden of justifying the shifting to the debtor of the legal expenses incurred for the postponement of the sheriff's sale increases.  Even so, I can even conceive of circumstances in which the viability of a chapter 13 bankruptcy case that has been pending for four (4) months (as was the case was when WSFS filed its first state court postponement motion prior to the November 2017 sale date) is sufficiently tenuous that it may continue to be reasonable for a creditor to file a state court postponement motion, rather than

staying the sale and incurring all of the noticing costs of rescheduling.[6]

In this case, however, WSFS made no record. It presented no factual or legal argument why it was reasonable to postpone the sheriff's sale beyond the November 10, 2017 sheriff's sale date that was obtained without the necessity of a motion, much less why it filed two (2) additional postponement motions. Evaluating whether the circumstances make it reasonable for a creditor to incur those expenses and shift them to the borrower is a fact intensive inquiry that requires an evidentiary record that is lacking here In these circumstances, I do not consider any of the legal expenses incurred for filing the sale postponement motions to be reasonable expenses of foreclosure under paragraph 17 of the mortgage or allowable in this bankruptcy case.

Nonetheless, I conclude that some portion of the requested attorney's fees are allowable.

As in Cohen-Harvin, I infer that some attorney time was necessary after the entry of the foreclosure judgment to schedule the July 2017 sheriff's sale and to obtain the two (2) postponements (from July to September and from September to November 2017). With the limited record before me, I conclude that it is reasonable to allow WSFS $600.00 for those legal services.[7]

---

[6] . Typically, four (4) months into a bankruptcy case, a debtor has filed his or her schedules, attended the meeting of creditors as required by 11 U.S.C. §341 and should have commenced performance under the proposed chapter 13 plan. Depending upon the quality of the debtor's performance of his or her obligations, it may or may not be reasonable for a creditor to incur additional legal expenses to file a motion to postpone a sale that was stayed by the bankruptcy filing.

[7] I am cognizant that some portion of the allowed attorney's fees are attributable to post-petition services. See 11 U.S.C. §506(b).

### 4. insurance charge

The next expense in WSFS's itemization is the $433.50 insurance charge. Presumably, this is a request for reimbursement of a disbursement made for hazard insurance.

The insurance charge is not allowable.

As stated in Cohen-Harvin,

> the mortgage provides only that those charges may be passed on to the borrower as part of the Debtor's obligation under the mortgage. There is no provision in the mortgage stating that [WSFS's] right to make advances for . . . insurance and to recover those advances from Debtor survives the entry of judgment. Nor is there any evidence that those escrow advances are related to the judicial foreclosure process as contemplated by Paragraph [17]. Therefore, the charges will not be allowed.

Cohen-Harvin, 571 B.R. at 680 (Bankr. E.D. Pa. 2017) (edited to conform the references to the claimant and mortgage provision in this case; emphasis omitted); accord Stendardo, 991 F.2d at 1095–96; In re Miles, 400 B.R. 441, 443–44 (Bankr. E.D. Pa. 2008); In re Dukes, 1997 WL 860676, at *6 (Bankr. E.D. Pa. Nov. 7, 1997).

### 5. other charges

Finally, I consider together the charges for satisfaction of a lien against the property ($1,629.91), property preservation ($141.00) and corporate advances ($10.05).

All of these charges appear to be encompassed by paragraph 7 of the mortgage as disbursements designed to protect WSFS's mortgage position on the property. However, like the escrow payment duties of paragraph 2, nothing in the text of paragraph 7 suggests that the Debtor's obligation to reimburse WSFS for amounts disbursed by WSFS for any expense necessary to protect WSFS's mortgage position survived the entry of the foreclosure judgment.

Perhaps recognizing that paragraph 7 of the mortgage merged into the judgment, WSFS

argues that these expenses are all "necessary to facilitate execution upon its . . . foreclosure judgment." (WSFS Memorandum at 5). I reject this weak argument.

Initially, with respect to the property preservation and corporate advances charges, WSFS has not even established the nature of these charges. Is property preservation an expense for some repair to the property? That is unlikely, considering that the property is the Debtor's residence. If not for repair, what was it for? Similarly, the corporate advance charge is a complete mystery. Even if the nature of these charges were better explained, WSFS has not identified any authority under Pennsylvania law that indicates the necessity of paying these expenses in order to conduct a mortgage foreclosure sale.

As for the "lien satisfaction advance," WSFS has not explained whose lien was satisfied. Considering WSFS's position as the Debtor's residential mortgage lender, I may infer that this charge was an advance to pay a real estate tax bill. If so, this disbursement is governed by paragraphs 2 and 7 of the mortgage, both of which merged into the judgment. Further, WSFS again has not identified any authority under Pennsylvania law requiring the payment of other liens on a property as a requirement of bringing the property to a foreclosure sale.[8]

For these reasons, the three (3) final charges will be disallowed.

---

[8] To the extent WSFS is suggesting that failure to pay the real estate taxes could result in a tax sale, thereby preventing WSFS from bringing the property to a mortgage foreclosure sale, that argument fails for two (2) reasons. First, the argument again is grounded in paragraphs 2 and 7 of the mortgage because the disbursement resolved a risk to WSFS's lien position, rather than satisfying a legal requirement for a foreclosure sale as required by paragraph 17. Second, the automatic stay has been in place since this bankruptcy case was filed. No creditor could have threatened WSFS's position without obtaining relief from the stay.

## IV.  CONCLUSION

Based on the foregoing, I will sustain the Objection in part and deny it in part as follows:

| | |
|---|---:|
| **judgment entered on March 23, 2017** | **$49,516.62** |
| **interest @ 11.25%** | **1,602.51** |
| **satisfaction of a lien against the property** | **disallowed** |
| **insurance charge** | **disallowed** |
| **attorney's costs** | **disallowed** |
| **attorney's fees** | **600.00** |
| **property preservation** | **disallowed** |
| **corporate advances** | **disallowed** |
| **Total** | **$51,719.13** |

An order consistent with this Memorandum will be entered.

**Date:  March 19, 2018**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**